No. 21,707.

MARY E. HAMBLIN, *Appellee*, v. EDNA MARCHANT, *Appellant*, et al.

SYLLABUS BY THE COURT.

1. DESCENTS AND DISTRIBUTIONS—*Wife Killing Husband—Right of Inheritance—Statutes*. Section 3856 of the General Statutes of 1915 applies to a woman who kills her husband by shooting him, for which she is afterwards convicted of manslaughter in the third degree.

2. SAME—*Widow Inherits Only by Virtue of Statute*. A widow takes property from her deceased husband under the statute of descents and distributions, and not otherwise.

3. SAME—*Statute Disinheriting Certain Criminals Constitutional*. Section 3856 of the General Statutes of 1915 does not violate section 10 or section 12 of the bill of rights, or section 6 of article 6 of the state constitution, or the fourteenth amendment to the constitution of the United States.

Appeal from Montgomery district court; CHARLES D. SHUKERS, judge *pro tem*. Opinion filed October 12, 1918. Affirmed.

*Thomas E. Wagstaff*, of Independence, for the appellant.
*Sullivan Lomax*, of Cherryvale, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff commenced this action to quiet title to certain real property in Montgomery county. Judgment was rendered in her favor and against defendant Edna Marchant, who appeals. All the other defendants filed disclaimers.

On July 10, 1915, John A. Marchant owned an undivided one-half interest in the land in controversy. On that day he was shot and killed by defendant Edna Marchant, who was then his wife. They had no children. Edna Marchant was afterward convicted of manslaughter in the third degree for killing her husband.

1. Edna Marchant claims that she is the only heir of John A. Marchant, deceased, and that she is, therefore, the owner of an undivided one-half interest in the real property. She claims that section 3856 of the General Statutes of 1915 does

not apply to persons convicted of manslaughter in the third degree.    That section reads:

"Any person who shall hereafter be convicted of killing or of conspiring with another to kill, or of procuring to be killed, any other person from whom such person so killing or conspiring to kill or procuring said killing would inherit the property, real, personal, or mixed, or any part thereof, belonging to such deceased person at the time of death, or who would take said property by deed, will or otherwise, at the death of the deceased, shall be denied all right, interest and estate in or to said property or any part thereof, and the same shall descend and be distributed to such other person or persons as may be entitled thereto by the laws of descent and distribution, as if the person so convicted were dead."

In *McAllister v. Fair*, 72 Kan. 533, 84 Pac. 112, decided in 1906, this court declared that a husband inherits his intestate wife's property, although he killed her for the purpose of acquiring that property.    The 1907 session of the legislature passed the statute quoted, apparently for the purpose of changing the rule of law declared by the court.    The language of the statute is broad and includes every person who may take property from a deceased person in either of the ways named in the statute.    The statute says any person who shall hereafter be convicted of killing any other person, etc.    A conviction for manslaughter is a conviction for killing.    John A. Marchant was killed by his wife, who shot him.    That act was within the statute.

2.    It is contended that Edna Marchant did not inherit nor otherwise take from her husband.    Then how does she claim any right to the property?    If she has any right, that right comes from our statute of descents and distributions.    She acquires no right to her husband's property, except by virtue of that statute.    It does not matter whether that right is acquired by inheritance or by contract growing out of the marriage relation.    Edna Marchant either inherited the property or otherwise took it from her husband, unless section 3856 prevents her from acquiring it.    That section controls, and prevents her from taking the property under any circumstances.

3.    The constitutionality of the statute is questioned.    It is argued that it violates sections 10 and 12 of the bill of rights, and section 6 of article 6 of the state constitution, and that it also violates the fourteenth amendment of the constitution of the

United States. It is argued that the statute is penal and works a forfeiture. So far as the present action is concerned, the statute changed the law of the devolution of property on the death of the owner. The legislature has entire control of that matter. The law of descents and distributions prescribes the way in which property shall go on the death of the owner, and the statute in question is merely an exception to the general rules prescribed by the statute of descents and distributions. The statute in question is a part of the law of descents and distributions, and it provides that the property of a deceased owner shall not go to the person who took the owner's life. Whether the person to whom the property would ordinarily go took the owner's life is a question that must be judicially determined by a court of competent jurisdiction. The legislature has seen fit to say that that fact must be ascertained in a criminal prosecution in which the person who would take the property is charged with killing the owner. When that fact is ascertained, the property is not then taken from the person who would inherit, but it is then determined that the person never did inherit, and never did acquire any interest in the property. The statute is not penal; it does not add anything to the punishment of the person convicted; neither does it provide for a forfeiture; and nothing is taken from the person convicted. Edna Marchant never acquired nor received anything that could be taken from her. It follows that neither of the constitutional provisions mentioned has been violated by the statute. The conclusion reached is supported by *Perry v. Strawbridge,* 209 Mo. 621.

The judgment is affirmed.