No. 21,707.

MARY E. HAMBLIN, *Appellee,* v. EDNA MARCHANT, *Appellant,* et al.

OPINION ON REHEARING.

Appeal from Montgomery district court; CHARLES D. SHUKERS, judge *pro tem.* Opinion on rehearing filed May 10, 1919. Former opinion of affirmance adhered to. (See 103 Kan. 508, 175 Pac. 678.)

*Thomas E. Wagstaff,* of Independence, for the appellant.
*Sullivan Lomax,* of Cherryvale, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: An opinion was rendered in this action on October 12, 1918. (*Hamblin v. Marchant,* 103 Kan. 508, 175 Pac. 678.) A rehearing was granted. The defendant insistently argues that section 3856 of the General Statutes of 1915 is unconstitutional, in that it works a forfeiture of a wife's rights in her husband's property when she survives him and is convicted of killing him. Homestead rights do not appear to be involved, at least they are not argued. The defendant's argument is largely based on the declarations of this court concerning the interest of a wife in the property of her husband, while both are living. These declarations will be examined in connection with the statute that gives to the wife that interest. That statute in part reads:

"One-half in value of all the real estate in which the husband, at any time during the marriage, had a legal or equitable interest, which has not been sold on execution or other judicial sale, and not necessary for the payment of debts, and of which the wife has made no conveyance, shall, under the direction of the probate court, be set apart by the executors as her property, in fee simple, upon the death of the husband, if she survives him." (Gen. Stat. 1915, § 3831.)

Pertinent declarations of the court follow:

"A wife residing in this state is entitled, upon the death of her husband, to the half of all the real estate owned by him during the marriage which has not been sold on judicial sale, and is not necessary for the payment of debts, and of which the wife has made no conveyance; so that there is an inchoate interest to the extent of one-half given to

the wife in the real estate of the husband. It is true that this interest in the real estate of the husband is inchoate and uncertain, yet, according to the authorities, it possesses the element of property. It is an interest and right of which she can be divested only by her consent, or crime, or her dying before her husband. It is an interest which may be, in connection with the husband, the subject of contract and bargain, and is by many of the authorities denominated a contingent but valuable interest. It has been decided by this court that the wife has an estate in the homestead occupied by herself and husband, although the title to the same be in the husband, and that it is such a present and existing estate that it will be protected by the courts. (*Helm v. Helm*, 11 Kan. 19; *Jenness v Cutler*, 12 id. 500.)" (*Busenbark v. Busenbark*, 33 Kan. 572, 576, 7 Pac. 245.)

"The interest of the wife in the real estate of her husband during marriage is a contingent one, it is true, but it is unquestionably property. . . . That it is an existing interest, and one which may be the subject of conveyance by the wife during marriage, is expressly recognized by the statute defining the same." (*Munger v. Baldridge*, 41 Kan. 236, 243, 21 Pac. 159.)

"Under our statute, the property of the husband belongs exclusively to him, as the wife's property is exclusively her own. Neither has any vested interest or control over the property of the other by virtue of the marriage relation. The wife has no estate in the land of the husband. It is a mere possibility, depending upon the death of the husband, or whether he has divested himself of the title prior to his death. If he survives her, no interest is taken by nor transmitted to her heirs. If she survives him, but before his death he conveys the land, or it has been sold on execution or other judicial sale, nothing remains for her to take, and she has been deprived of no right. If there was an attempt to convey by the husband alone, when his wife was a resident, the title would remain in her, because the manner of conveying land prescribed by statute had not been pursued; and if there was no judicial sale of the land and it was not necessary for the payment of debts, a one-half interest would descend to her." (*Buffington v. Grosvenor*, 46 Kan. 730, 734, 27 Pac. 137.)

"The interest which the statute gives to the wife in the real estate of her husband during his life is not easily classified or defined. Because of this difficulty it has been thought by some to be in its nature an inheritance, and such a suggestion may be found in some of the opinions of this court. But practically the entire trend of the decisions of this court is to treat it as a present existing interest—one which the wife may protect by an appropriate action during the life of the husband and against his wrongful acts." (*McKelvey v. McKelvey*, 75 Kan. 325, 329, 89 Pac. 663.)

"Where the wife of a mortgagor of unoccupied Kansas lands comes into court on a publication service and admits that she joined with her husband in the execution of a note and mortgage, and no personal judgment is sought against her, she has no appealable interest in the lands

Hamblin v. Marchant.

of her husband subjected to foreclosure under a judgment based on such note and mortgage." (*Stinson v. Bell*, 96 Kan. 191, syl. ¶ 3, 150 Pac. 603.)

"It has been difficult to find a name for the interest the wife has in her husband's real estate apart from the homestead." (*Murray v. Murray*, 102 Kan. 184, 185, 170 Pac. 393.)

"Money paid a married man as the consideration for a conveyance of his real estate, in which his wife joins, belongs to him, unless it be definitely agreed that a specific portion shall belong to her individually." (*Osborn v. Osborn*, 102 Kan. 890, syl. ¶ 6, 172 Pac. 23.)

"But a wife has certain rights and interests in property acquired by the husband during the existence of the marriage relation which, with the aid of the statute, the courts upon proper occasion will recognize and protect. Without such statute, these rights of the wife would be imperfect and unenforceable, but they would morally exist nevertheless, and they only need such statute to give them legal vitality. It is not easy, and perhaps unnecessary, to delimit all these rights. Where the marriage relationship is harmonious, it is scarcely necessary to consider them. Ordinarily it requires either death or discord to mature them. . . . From the adoption of the constitution until now, the whole tendency of our legislation has been to recognize that the wife has a clearly existent legal and equitable right in the property of her husband, which is based upon the marriage relation and the spirit of mutual coöperation which is presumed to arise therefrom and to find its fruition in the joint accumulation of property to serve their mutual needs and to avert or minimize the adverse contingencies of life. . . . If they lived together happily, both would enjoy the property, and upon the death of one of them, the other's half interest would completely mature, and the statutes of wills and of descents and distributions would protect it." (*Putnam v. Putnam*, ante, pp. 47, 52, 53, 54, 177 Pac. 838.)

Under these declarations, the interest of a wife in her husband's property must be declared inchoate, and not vested. Can the legislature change or destroy that interest before it has become vested by the death of the husband? That question must be answered in the affirmative, for the reasons that follow:

There are some points of analogy between the present right of a wife in the property of her husband, and dower as it existed in this state before section 3831 was enacted. Dower was then provided for by section 1 of chapter 83 of the Compiled Laws of 1862, which read:

"Every widow shall be endowed of the third part of all the lands whereof her husband, or any other person to his use, was seized of an estate of inheritance, at any time during the marriage, to which she shall not have relinquished her right of dower in the manner prescribed

by law, to hold and enjoy during her natural life. Dower. in leasehold estates, for a term of twenty years or more, shall be granted and assigned as in real estate; for a [less] term than twenty years, shall be granted and assigned as in personal property."

Concerning that statute, this court said:

"We cannot consent to the view vigorously claimed, that dower is such a vested right as to forbid the legislature from changing or repealing such contingent interest." (*Chapman v. Chapman,* 48 Kan. 636, 638, 29 Pac. 1071.)

"Before the death of the husband and while the right of dower is in the inchoate stage, it is subject to legislative control, and may be enlarged, diminished, altered, or abolished." (*Hatch v. Small,* 61 Kan. 242, syl. ¶ 1, 59 Pac. 262.)

There are ample authorities supporting these declarations of this court. (12 C. J. 961; 6 R. C. L. 312; Note, 12 Ann. Cas. 191.)

The same rule applies to curtesy before it is vested by becoming curtesy initiate. (12 C. J. 962; 6 R. C. L. 313.)

It has been held that this rule applies to community property (12 C. J. 962; *Arnett v. Reade,* 220 U. S. 311; *Warburton v. White,* 18 Wash. 511; affirmed in *Warburton v. White,* 176 U. S. 484.)

But there are contrary. authorities. (*Spreckels v. Spreckels,* 116 Cal. 339.) The rule has not been confined to dower, curtesy, and community property, but has been applied to the statutory interest of a wife in the property of her husband where she survives him and thereafter holds in fee a portion of his land.

"The right which a wife has by virtue of. chapter 40, Laws 1875, and chapter 37, Laws 1876, in the lands of her husband during coverture, is incohate and contingent, and may, at any time before it becomes consummate by the death of the husband, be diminished or entirely taken away by the legislature." (*Griswold v. McGee,* 102 Minn. 114, syl. ¶ 1.)

There can be no serious question about the power of the legislature to change, enlarge, diminish, or abolish the right of a wife in the property of her husband, other than the homestead, at any time before that right becomes vested by his death. If this is true, it necessarily follows that the legislature had the right to say that a wife who kills her husband shall not receive any part of his property; therefore, section 3856 of the General Statutes of 1915 does not violate section 10 or

Gorrill v. Greenlees.

section 12 of the bill of rights, or section 6 of article 6 of the state constitution.

Other questions are discussed, but they were sufficiently answered in the former opinion.

The judgment of affirmance is adhered to.