Kelley v. Madden.

———•◆•——

JAMES T. KELLEY AND WIFE vs. PATRICK MADDEN.

The law providing for a partition of real estate among joint owners by a proceeding in equity contemplates an equitable partition according to real ownership, rather than a partition according to precise legal interest; but where the legal interests are certain, and the facts are such as to render the equitable proportions entirely uncertain, the only safe rule is to follow the legal title.

A brother and sister, both unmarried, in 1853 purchased a tract of land together for $600, subject to a mortgage of $300, taking the title equally; he paying $220 towards the purchase and she $80. They soon after built a house and made other improvements upon the land, and lived together upon it as one family, supporting their aged mother, and keeping a dairy; he for a few years working in a manufacturing establishment and afterwards devoting his time to the farm; she doing all the in-door work, and assisting somewhat in the out-door work. During this time the earnings of the brother and the profits of the farm went into a common fund, from which the family was supported, taxes and interest on the mortgage paid, and the improvements made, but no accounts whatever were kept. The sister received nothing but her board and clothing, but it was found that the money contributed by her originally, with $1(0 afterwards paid to her brother, and the value of her services above the expense of her board and clothing, were equal to more than half the cost of the farm, and of all the improvements upon it. There had been no agreement that their respective interests in the farm should be other than those indicated by the deed, nor any agreement for wages for the sister. In 1871 the farm had much advanced in value, and was worth $8,000. Upon a petition brought at this time by the sister for a partition, it was held that there should be an equal partition according to the legal title, leaving the account between the parties to be settled by a separate suit if necessary.

BILL IN EQUITY for a partition or sale of real estate; brought to the Superior Court in Hartford County. The petition alleged that Rosa Kelley, one of the petitioners, and the respondent, were joint and equal owners. The following facts were found by a committee to whom the case was referred.

The petitioner, Rosa Kelley, is a sister of the respondent. On the 9th pay of July, 1853, they purchased the land described in the petition, taking a joint deed therefor. The price paid for it was $600, including a mortgage to the Society for Savings for $300. They paid the grantor $300 in money and assumed the mortgage. The respondent gave to the Society for Savings his written obligation to pay the same. Of the amount paid to the grantor, the respondent furnished $220, and the petitioner, then Rosa Madden, furnished $80. Since that time the interest on the mortgage debt, and $100 on the principal, have been paid.

The deed stated the consideration to be $600, received of Patrick Madden and Rosa Madden, conveyed the land to them equally, and referred to the mortgage to the Society for Savings as one " which the said Patrick Madden and Rosa Madden are to assume and pay."

The expense of clearing the land and fitting it for cultivation was considerable, but the amount paid for that purpose cannot now be definitely ascertained.

In 1855, and subsequently, there were erected on the land a dwelling house and outbuildings, costing in the aggregate about $1,200. Prior to April 1st, 1856, Mrs. Kelley paid to her brother about the sum of $100.

In the spring of 1856, the parties, both being then unmarried, commenced house-keeping in the dwelling house, supporting their mother, and a child, the nephew of the parties. They cultivated the farm, kept a dairy, &c.

Until the year 1863 Mrs. Kelley did the housework, except what was done by her aged mother, now ninety-nine years old, and most of the work on the land. The respondent during that time was in the employ of Colt's Fire Arms Manufacturing Company. The petitioner received no wages for such services except her board and clothes.

In 1863 the respondent took charge of the farm in person, and has continued in charge of it until the present time. Mrs. Kelley did the housework as before, and assisted her brother to some extent in the out-door work.

In the spring of 1867 the respondent was married, since which time his wife has taken charge of the housework. Mrs. Kelley assisted her, and assisted in the out-door work to some extent. In October, 1871, Mrs. Kelley was married, since which time she has not lived on the farm.

From April 1st, 1856, to the time of the marriage of Mrs. Kelley, the income and profits from the farm, and the earnings of the respondent, constituted a common fund, from which the family was supported, the interest on the mortgage and the taxes were paid, and all the improvements on the farm, including the buildings, were made.

There was no agreement between the parties that their respective interests in the real estate should be other than that indicated by the deed; nor was there any agreement respecting wages for Mrs. Kelley's services, or the interest that she should have, if any, in the stock on the farm. Nor has either party kept any account against the other.

But the committee found that the money advanced by Mrs. Kelley, and the money earned by her services beyond the expense of her board and clothing, were more than sufficient to pay for one-half of the entire cost of the farm and the improvements upon it; also that the respondent's services during the same time were much more than sufficient. It was also found that the real estate was now worth about $8,000, that it might be conveniently aparted, and that a partition of the same would better promote the interests of the parties concerned than a sale.

Upon these facts the case was reserved for the advice of this court.

*H. S. Barbour* and *Jones*, for the petitioners.

1. By the deed the grantees took each an equal share of the land, as tenants in common. In *Treadwell* v. *Buckley,* 4 Day, 395, the law is thus stated by Judge Reeve:—" When

a conveyance is made to more than one person, they take in equal proportions, unless different proportions are designated upon the face of the deed, nor can the considerations paid by the several grantees be inquired into by parol in order to show that they are entitled to different proportions." So also by Judge Swift, 1 Swift Dig., 109. The buildings afterwards erected on the land are held to be owned in the same way. *Benedict* v. *Benedict*, 5 Day, 464; *Isham* v. *Morgan*, 9 Conn., 374; *Prince* v. *Case*, 10 id., 375; *Baldwin* v. *Breed*, 16 id., 65. The parties now hold the title as they originally took it.

2. The rule in equity of a *resulting trust* in favor of one who pays for land which is deeded to another, or the rule sometimes applied, that when land is deeded to two or more who pay unequally for it, a trust results in favor of each to the extent of the consideration paid by each, is not applicable to this case to change the rule of law.—1st. Because a trust is not *presumed* except in case of absolute necessity. 2 Story Eq. Jur., §§ 1195, 1199; *Cook* v. *Fountain*, 3 Swanst., 585; *Orton* v. *Knob*, 3 Wis., 576; *Brace* v. *Reid*, 3 Iowa, 426; 1 Hilliard R. Prop., ch. 23, § 16. The contrary intent is apparent in this case. The grantees went into joint occupation of the property with their mother and a nephew, keeping house, and so continued from 1856 to 1871; they put their earnings into a common fund for the support of the family, for paying interest and taxes, and for the improvement of the farm, and they kept no accounts with each other in any manner. *Baldwin* v. *Breed*, 16 Conn., 70.—2d. The consideration paid by each was not paid for any specific part or proportion, but each paid according to ability and convenience. *Perry* v. *McHenry*, 13 Ill., 221, 227; *Sayre* v. *Townsend*, 15 Wend., 650; *Baker* v. *Vining*, 30 Maine, 121; *Dudley* v. *Bachelder*, 53 id., 403; *White* v. *Carpenter*, 2 Paige, 217, 238; *McGowan* v. *McGowan*, 14 Gray, 119; *Crop* v. *Norton*, 2 Atk., 74. The finding shows it to be impossible to apply the equitable rule of implied trust, for the proportions paid by each for the farm as it now is are indefinite, and not ascertainable.—3d. A trust cannot be implied against the *intent* of the parties gathered from all the circumstances. *White* v. *Carpenter*, 2 Paige, 217; *Hat-*

ton v. Landman, 28 Ala., 127; Livermore v. Aldrich, 5 Cush., 431; Brace v. Reid, 3 Iowa, 422; Gee v. Gee, 2 Sneed, 396; 2 Swift Dig., 112.—4th. The lapse of time since the purchase of the land, and no claim made by the respondent, rebuts any presumption of a trust. Decouche v. Lavetier, 3 Johns. Ch., 216; Shaver v. Radley, 4 id., 316; Townsend v. Townsend, 1 Cox, 28; 1 Hilliard R. Prop., ch. 23, § 16.—5th. Presumption of a trust is rebutted in case the purchase can fairly be deemed to have been made for another from motives of natural love and affection. Dickinson v. Davis, 43 N. Hamp., 647; Baker v. Vining, 30 Maine, 128; Welton v. Divine, 20 Barb., 9; Hatton v. Landman, 28 Ala., 127; 2 Story Eq. Jur., § 1202; Smith's Manual of Equity, 172. As the land was purchased by a brother and sister to make a joint home for themselves and their mother, nothing would seem more natural than that they should hold equally, and that they so intended. The change of intention on the part of the respondent evidently occurred after the farm increased so largely in value.

3. The fact found by the committee, that "the money advanced by Mrs. Kelley, and the money earned by her services beyond the expense of her board and clothing, were more than sufficient to pay for one half of the entire cost of the farm with the improvements, amounts to a finding that she has paid one-half the cost of the farm"; and therefore no equities exist against her holding it according to the rule of law.

*Collier*, for the respondent.

1. The report of the committee shows that an account should be taken. Under these circumstances a court of equity will not pass a decree of partition. 1 Story Eq. Jur., § 655; Green v. Putnam, 1 Barb., 500; Swan v. Swan, 8 Price, 518. There is no prayer for an account in the petitioners' bill.

2. If a decree can be passed without an account it must revert back to the origin of the estate, and divide the property as it would have been divided at the time of the purchase from Allen. The parties contributed unequal sums toward the pur-

chase of the land, and took interests therein in proportion to their payments. The general rule of a resulting trust to the payer of the purchase money for an estate is too well settled to require discussion. *Booth's Appeal from Probate,* 35 Conn., 169; *Dyer* v. *Dyer,* 2 Cox, 92. If parties contribute unequal amounts they take *pro tanto.* Perry on Trusts, § 132; 2 Story Eq. Jur., § 1206; *Shoemaker* v. *Smith,* 11 Humph., 81; *Seaman* v. *Cook,* 14 Ill., 501; *Wallace* v. *Duffield,* 2 Serg. & R., 527; *Purdy* v. *Purdy,* 3 Maryl. Ch. Dec., 547; *Morey* v. *Herrick,* 18 Penn. S. R., 129; *Botsford* v. *Burr,* 2 Johns. Ch., 409, 415. The interest is fixed at the time of the purchase, and cannot be changed by a subsequent payment. Perry on Trusts, § 133; *Barnard* v. *Jewett,* 97 Mass., 87; *Botsford* v. *Burr,* supra; *Purdy* v. *Purdy,* supra. Mrs. Kelley paid $30 only of the $600. The respondent paid $220, and gave his obligation to the mortgagee for $300 more. In the recital of the deed it is said that both the grantees were to assume the mortgage. But this was done by the respondent alone.

PHELPS, J. The petitioners in this case ask for either the partition or sale of undivided land, but it is found that a partition can conveniently be made and will better promote the interest of the parties than a sale, and therefore the only question to be determined relates to the principle on which partition shall be made.

It appears from the report of the committee that the land asked to be aparted was conveyed to the respondent and Rosa Kelley, then Rosa Madden, in 1853, and that the legal title was jointly and equally vested in them; that valuable improvements have since from time to time been made upon it, and that until recently the parties have jointly occupied the premises, making a common stock of their labor and earnings and keeping no account of their services or expenses. The respondent paid much more than one half of the sum actually applied as purchase money, but it is found that the value of the petitioner, Rosa Kelley's, services, with the money she has contributed, is more than equal to one half of the entire cost of

the land with all the improvements. From the fact that no accounts were kept between the parties, and no understanding at any time existed between them that they were to or did own the property otherwise than in equal interests, we think it was their intention to apply their joint services, and their means as they should accrue, to the execution of a common object,—to carry on, improve, and enjoy the premises as common and equal proprietors for the purpose of a common home. Indeed, it is found .that from 1856 to 1871, the income and profits from the land, and the earnings of the respondent, constituted a common fund from which the family were supported, interest and taxes paid, and all improvements made. .

The law undoubtedly contemplates an equitable partition according to real ownership rather than according to precise legal interest, but where the measure of legal interest is clearly defined, and the facts are such as to render the equitable proportions of the parties entirely uncertain, we know of no rule of division so satisfactory and so free from danger of working injustice as that which follows the legal title of the parties.

Whether upon a strict accounting one would be found considerably in arrear and indebted to the other, we cannot from the facts which are disclosed with any certainty determine, but if so the value of the property is adequate security, or may be made so to the party in whose favor the balance would be found; and while under the circumstances of the case an accounting prior to a partition, and an order for partition equitably made on the result of such accounting, would be most satisfactory and possibly more strictly just, yet we apprehend no serious difficulty will be experienced in the attempt to obtain a subsequent reasonable and fair adjustment of their respective claims.

We advise the Superior Court to order an equal partition.

In this opinion the other judges concurred.